IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

RICHARD THOMAS O'DELL,           ]
                                 ]
    Movant,                      ]
                                 ]
vs.                              ]    5:11-cv-8003-RDP-RRA
                                 ]    5:09-cr-0208-RDP-RRA
                                 ]
THE UNITED STATES OF AMERICA,    ]
                                 ]
    Respondent.                  ]

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. § 2255. The movant, Richard Thomas O'Dell was convicted in this court on August 5, 2009, on his plea of guilty to one count of distribution of Fentanyl resulting in death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C)(Count 1). Pursuant to the plea agreement, O'Dell waived his right to appeal or to file post conviction petitions. He was sentenced on January 12, 2010, to a term of imprisonment for 151 months, to be followed by a 36-month term of supervised release. O'Dell did not appeal his conviction or sentence.

In support of his motion to vacate, O'Dell claims that:

1) serious questions of fact require further investigation because:

    a) there is no evidence that O'Dell possessed the pain patch with intent to distribute or dispense it; and

    b) there is no evidentiary conclusion that the Fentanyl patch was the cause of death;

 2) his level III criminal history overrepresents the severity of his prior crimes; and

 3) he received ineffective assistance of counsel because counsel:

  a) failed to investigate whether or not there was a valid defense present;

  b) failed to "properly communicate the possible sentence related to the charges"; and

  c) improperly withdrew two motions to suppress statements and evidence obtained in violation of the movant's constitutional rights without pursuing a full hearing on the motions.

In response to the court's order to show cause, the respondent has filed an answer in which it maintains that the motion to vacate is due to be denied. In response to the answer, the movant has filed an affidavit.

## **WAIVER**

It is well-settled that a knowing and voluntary waiver of the right to appeal is generally enforceable. In *United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993), the court stated:

> In order to prevail in its argument [that a defendant has knowingly and voluntarily waived his right to appeal a sentence] . . . [t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.

*Bushert*, 997 F.2d at 1351 (footnote omitted). Therefore, if the government proves either of the two elements of the *Bushert* test, the movant is precluded from challenging his conviction or sentence either on appeal or in a § 2255 motion.

Prior to entering his guilty plea, O'Dell signed a plea agreement containing the following language:

> In consideration of the recommended disposition of this case, I, Richard Thomas O'dell, hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or sentence the court might impose upon me. Further I waive and give up the right to challenge any conviction or sentence imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:
>
> The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:
>
> (a) Any sentence imposed in excess of the applicable statutory maximum sentence(s); and
>
> (b) Any sentence that constitutes an upward departure from the advisory guideline sentencing range calculated by the court at the time sentence is imposed.
>
> The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction. The defendant further acknowledges and understands that the government retains the right to appeal where authorized by statute.
>
> I, Richard Thomas O'dell, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

*Plea Agreement* at 9-11. O'Dell's signature appears immediately below this paragraph.

Furthermore, at the plea hearing, the following transpired:

THE COURT: All right. There's another section on Page 9 that carries over to Page 11 at the top where your signature appears called Waiver of Right to Appeal and Post-Conviction Relief. What I want to make sure you understand is that by signing on Page 11 and entering your Plea pursuant to this Agreement today, you are waiving your right to challenge on appeal or in a later lawsuit your conviction and sentence in this case unless the sentence imposed is in excess of a statutory maximum or would constitute an upward departure from

3

> the Advisory Guideline Range as calculated and found by the Court at the time of sentencing. Do you understand what I'm referring to there?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Do you understand that unless one of those two exceptions apply, you are waiving your right to file an appeal and you are waiving your right to file a later lawsuit challenging your conviction and sentence?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. And do you understand that only you can make the decision about whether to waive those rights. Your lawyer can give you advice, but he can't make the decision for you. Neither can anyone else. It's got to be your decision about whether to waive those rights pursuant to this Plea Agreement.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Have you made a decision it's in your best interest to do so?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Finally, your signature on Page 14 of the Plea Agreement means, among other things, that you have read the Agreement, approved all the previous paragraphs in the Agreement, and understand all the provisions of the Agreement and agree to be totally bound by the provisions of the Agreement. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

*Transcript of Plea Hearing* at 15 - 17.

Because the court explicitly addressed the waiver with O'Dell during the plea colloquy, the first prong of the *Bushert* test has been met. Therefore, O'Dell is barred from raising his claims that serious questions of fact require further investigation (Claim 1); his level III criminal history overrepresents the severity of his prior crimes (Claim 2); and he received ineffective assistance of counsel because counsel failed to investigate whether or not there was

4

a valid defense present and improperly withdrew two motions to suppress statements and evidence obtained in violation of the movant's constitutional rights without pursuing a full hearing on the motions (Claims 3(a) and (c)) in a § 2255 motion to vacate.[1]

## INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. "Because the [movant] must prove both deficiency and prejudice, a [movant's] failure to prove either will be fatal to his claim." *Johnson v. Scott,* 68 F.3d 106, 109 (5th Cir. 1995).

---

[1] The waiver does not bar O'Dell from raising his claim that counsel failed to "properly communicate the possible sentence related to the charges" (Claim 3(b)), since this claim relates to the negotiation of, and entry into, the plea agreement.

Under the *Strickland* test, the movant must initially show that counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'" *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993)(*quoting Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835 (1991)). In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The effectiveness or ineffectiveness of counsel must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir. 1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *Strickland,* 466 U.S. at 691-92. In order to establish actual prejudice, a movant must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland,* 466 U.S. at 694. Furthermore, in addition to showing that the outcome would have been different, a movant must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994)(*citing Lockhart*

6

*v. Fretwell*, 113 S. Ct. 838, 844 (1993)). "In other words, a 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.'" *Weekley v. Jones*, 56 F.3d 889, 897 (8th Cir. 1995)(*quoting Fretwell*, 113 S. Ct. at 842). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 113 S. Ct. at 844.

The *Strickland* two-part test applies to challenges to guilty pleas based on ineffective assistance of counsel. *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001); *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). In a guilty plea context, a defendant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Gordon v. United States*, 518 F.3d 1291, 1297 (11th Cir. 2008)(*quoting Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

O'Dell claims that counsel, Robert B. Tuten, was constitutionally ineffective because he failed to "properly communicate the possible sentence related to the charges." (Claim 3(b)). He offers the following in support of this claim:

> Over the 2.5 year period this case was going on, Tuten and I met only approximately 4 times.
>
> I saw Mr. Tuten was [sic] on July 22, 2009 to sign the "Guilty Plea Advice or [sic] Rights Certification." This meeting between me and Robert Tuten only lasted about 15 minutes to 20 minutes, at the most. The meeting felt short, and I felt rushed through this meeting. I did not understand what I was signing. Mr. Tuten said if I pled guilty, I would most likely get probation. Worst case scenario I would serve up to 1 or 2 years of imprisonment. Serving a sentence of 151 months was never brought up as a possibility.

7

> I met with Mr. Tuten again in September or October. This meeting was also very brief. The attorney and I reviewed the sentencing report and had a brief discussion of the logistics of a sentencing hearing. I didn't understand the attorney's explanation. At this point, I still thought I was going to receive a sentence of probation and no jail time. Mr. Tuten said he didn't know what was going to happen, but he was still trying to get just probation.
>
> January 12, 2010 was the sentencing hearing. Mr. Tuten met me in the hallway and showed me the sentence recommended was 151 months. I was shocked; I felt dizzy. I was not prepared to plea to a sentence of 151 months; I was still thinking probation or a light jail sentence was the worst that could happen. In my shock and confusion, I didn't understand what I was agreeing to while in front of the judge. I felt like I was in a fog. I do not remember what the judge or lawyers said to me. The day is a blur. If I fully understood what I was pleading to and the rights I was waiving, I would not have plead guilty on that day.

*Movant's Affidavit*, Court Document 19-1 at 2-3.

O'Dell claims that but for counsel's misrepresentations regarding his potential sentence, he would not have entered a guilty plea. However, it is clear from the record of the plea proceeding that O'Dell was fully aware of the meaning of the plea agreement before he entered his plea of guilty.

> THE COURT: All right. Very well. Mr. Tuten, do you and your client have before you a copy of the 15-page written Plea Agreement that's been filed in with the Court today?
>
> MR. TUTEN: Yes, sir, we do.
>
> THE COURT: Before your client signed the Agreement, did you have a sufficient opportunity to discuss it with him?
>
> MR. TUTEN: Yes, Your Honor, I did.
>
> THE COURT: And did he have any questions of you concerning the meaning of the Agreement or its operation or effect that you did not feel you were able to answer to his satisfaction?

MR. TUTEN: Well, he did have some questions, Your Honor. They led me to believe and understand that he did know and understand the details of the Plea Agreement and also the impact of that on his case and how his options were affected by the Plea Agreement. I answered all of his questions and was satisfied that he understood my answers.

THE COURT: All right. Does the written Plea Agreement set forth everything you're aware of that your client is relying upon by way of a bargain or Plea Agreement with the government today?

MR. TUTEN: Yes, it does, Judge.

THE COURT: All right. Let me ask Mr. O'dell some questions: First, at each place in the Plea Agreement where your signature purports to appear, is that actually your own signature that you affixed to the Agreement?

THE DEFENDANT: Yes, sir.

THE COURT: And did you initial each page?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Im sorry? Any questions about that?

MR. TUTEN: No, sir. Our copy is not initialed, but --

THE COURT: Okay. Im just looking at the original here. And, Mr. O'dell, did you initial each page after you had reviewed that page and had an opportunity to discuss the contents of that page with your lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: Did you have any questions about the meaning of the Agreement or its operation or effect that you did not feel that your lawyer was able to answer to your satisfaction or that you failed to ask him for some reason?

THE DEFENDANT: No, sir.

THE COURT: So you think you fully understand the contents of the Agreement and how it affects you?

THE DEFENDANT: Yes, sir.

THE COURT: What I want to do next is cover with you a few sections of the Plea Agreement to make sure that you understand how they operate. There's a section that begins on Page 2 and carries over to Page 6 called Factual Basis for Plea. Do you see that section?

THE DEFENDANT: Yes, sir.

THE COURT: In that section, certain facts are indicated in the several paragraphs within that section. What I want to make sure you understand is that by signing the Agreement at Page 6 and entering your Plea pursuant to the Agreement today, you're agreeing that the facts reported in the Factual Basis for Plea section are true and correct to the best of your knowledge; you're admitting them and stipulating to them for purposes of my accepting your plea and for purposes of sentencing in this case, and you're waiving your right to have a jury determine these facts to be true beyond a reasonable doubt. Do you understand all that?

THE DEFENDANT: Yes, sir.

THE COURT: All right. There's another section called Cooperation on Page 6 and a section called Motion Pursuant to Section Guideline Section 5K1.1 and/or 18 U.S.C. Section 3553(e) that begins on Page 7. Do you see those two sections?

THE DEFENDANT: Yes, sir.

THE COURT: What I want to make sure you understand is that while the government has entered into an agreement to consider any cooperation you provide and to determine whether or not that rises to the level of substantial assistance, the question of whether your cooperation rises to the level of substantial assistance is a determination made solely by the government. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, you've got to satisfy the government that your cooperation rises to the level of substantial assistance. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And if they are not so satisfied, they are not required to file a motion seeking any downward departure of the sentence in this case. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Similarly, if they don't file a motion seeking a downward departure, the Court cannot downwardly depart on the basis of your cooperation or substantial assistance. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand what the government expects from you by way of cooperation in order to qualify for such a motion?

THE DEFENDANT: Yes, sir.

THE COURT: All right. There's another section on Page 9 that carries over to Page 11 at the top where your signature appears called Waiver of Right to Appeal and Post-Conviction Relief. What I want to make sure you understand is that by signing on Page 11 and entering your Plea pursuant to this Agreement today, you are waiving your right to challenge on appeal or in a later lawsuit your conviction and sentence in this case unless the sentence imposed is in excess of a statutory maximum or would constitute an upward departure from the Advisory Guideline Range as calculated and found by the Court at the time of sentencing. Do you understand what Im referring to there?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Do you understand that unless one of those two exceptions apply, you are waiving your right to file an appeal and you are waiving your right to file a later lawsuit challenging your conviction and sentence?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And do you understand that only you can make the decision about whether to waive those rights. Your lawyer can give you advice, but he cant make the decision for you. Neither can anyone else. Its got to be your decision about whether to waive those rights pursuant to this Plea Agreement.

THE DEFENDANT: Yes, sir.

THE COURT: Have you made a decision its in your best interest to do so?

THE DEFENDANT: Yes, sir.

>THE COURT: Finally, your signature on Page 14 of the Plea Agreement means, among other things, that you have read the Agreement, approved all the previous paragraphs in the Agreement, and understand all the provisions of the Agreement and agree to be totally bound by the provisions of the Agreement. Do you understand that?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And that puts you in somewhat different footing than the Court in that you and your lawyer and the government are bound by the contract you have entered into. You can expect the government to live up to its obligations under the agreement; the government can expect you to live up to your obligations under the agreement, but the Court is not bound by the agreement, isn't a party to it, and isn't required to follow any of it. Do you understand that?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Perhaps what that means most importantly for you today is that if I accept your Guilty Plea today, at such time as I proceed to impose a sentence, I could structure a sentence that's totally consistent with the Plea Agreement and any recommendations made by the United States Attorneys Office; or, I could structure a sentence that could be viewed as substantially more severe or substantially less severe than that contemplated by the Plea Agreement, and yet neither you nor the government would have the right to seek the withdrawal of the Guilty Plea that you're in the process of entering. Do you fully understand that?
>
>THE DEFENDANT: Yes, sir.

*Transcript of Plea Hearing*, pp. 11-17.

The court then explained the penalties O'Dell faced and the implications of the sentencing guidelines:

>THE COURT: What I want to do next is cover with you the penalties, and these are the penalties that apply at present without any indication or consideration of any substantial assistance or Downward Departure Motion. The Count to which you are pleading guilty to carries with it a fine of not more than $1 million, custody of not less than 20 years, up to life -- and that's because there was a death that resulted in the distribution -- supervised release term of not less than three years; an assessment fee of $100. Restitution

applies, and the Guidelines that we'll talk about in more detail in a moment apply. Do you understand all that?

THE DEFENDANT: Yes, sir.

THE COURT: Counsel, have I gotten that correct so far as everyone understands?

MR. TUTEN: Yes, sir, I believe so.

MR. PENFIELD: Yes, sir.

THE COURT: Mr. Penfield, are you satisfied with that presentation of the maximum and minimum penalties?

MR. PENFIELD: Yes, Your Honor, and we also set them out in the Plea Agreement.

THE COURT: Right.

MR. PENFIELD: So yes, sir.

THE COURT: All right. Let's talk about the Guidelines and, although advisory, and not mandatory, how they apply to this case. First, Mr. O'dell, have you talked with your lawyer about the Guidelines, and, again, although they are advisory, how they may apply to your case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that in determining a sentence, the Court will consider the Guidelines but is not bound to apply them but ultimately it must determine what a reasonable sentence is in this case, taking into account the factors that Congress has provided must be considered in sentencings like this. Do you understand all that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Tuten, have you completely discussed with and advised Mr. O'dell regarding the Sentencing Guidelines, and although advisory, how they may apply to the subject offense?

MR. TUTEN: Yes, Your Honor, I have.

> THE COURT: All right. Do you understand, Mr. O'dell, that if you get a sentence that's higher than you expected or a Guideline range higher than you expected, neither of those things would be a sufficient reason to set aside this guilty plea that you're in the process of entering.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you understand that at the Sentencing Hearing, the Court would have to determine what restitution was due to any victim of the offense and make a decision about that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Now, do you understand the charge made against you and the ranges of punishment available for that charge?
>
> THE DEFENDANT: Yes, sir.

*Transcript of Plea Hearing*, pp. 17-20.

O'Dell then assured the court, under oath, that he was pleading guilty because he was guilty and that no one had made him any promises or assurances in order to convince him to plead guilty:

> THE COURT: Other than the Plea Agreement that we've talked about, has anyone made any promise or assurance to you to cause you to plead guilty in this case?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone threatened you or coerced you in any way to cause you to plead guilty in this case?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Are you pleading guilty because you're, in fact, guilty of the charge made in Count 1 of the Indictment?

>THE DEFENDANT: Yes, sir.

*Transcript of Plea Hearing*, p. 20.

After the prosecutor set out the evidence that would have been offered if the case had gone to trial, the following transpired:

>THE COURT: All right. Mr. O'dell, you have heard the Assistant U.S. Attorney briefly outline some of the evidence he would expect to prove at trial if this case were to go to trial. Are the facts reported by Mr. Penfield in open court substantially correct?
>
>MR. TUTEN: Judge, if I may answer for him first. First of all, he does not dispute any of those facts. Yes, those are true and correct as far as he knows. Obviously there are some facts about this case learned from the investigation that he has no personal knowledge of. However, he does not dispute the accuracy of anything that's been set out in the Plea Agreement or offered in open court today.
>
>THE COURT: All right. Is that correct, Mr. O'dell?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Did you hear Mr. Penfield say anything that you thought was incorrect?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: All right. And did you do the things he said you did?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And did you know you were violating the law when you did those things?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: All right. We are near the end of the Plea Hearing, and what I want to make sure you understand is simply this. We have taken the time to spend time with you today to do two things: One, to make sure you understood all your rights; and that in knowing what your rights were, making sure that you understood what the government's case involved, what the law

is, so that you can make a knowing and voluntary decision about whether to plead guilty. All right. So that's the first thing we want to accomplish. The second thing is I wanted to listen to you and observe you to make sure that accepting a guilty plea if you wish to offer one would be appropriate. We don't want folks just walking in off the street pleading guilty to things unless we know that they have thought it through and that it's a knowing and voluntary plea. I do believe your Plea of Guilty offered to the Court is a knowing and voluntary plea. I do think you know what you're doing, and I've observed you and listened to your answers in reaching that decision and conclusion. So I am ready to accept a Guilty Plea from you today if you wish to offer one to the Court. But you are not required to plead guilty even at this point. You're not even expected to plead guilty. It's still got to be your decision about whether to plea guilty. In fact, if you wish to do so, I would let you reinstate your not guilty plea, and we would set the case for trial to see if the government could prove these things beyond a reasonable doubt. Do you understand everything I've just said to you?

THE DEFENDANT: Yes, sir.

THE COURT: Now, if you do plead guilty today and I accept your guilty plea, you would not then be allowed to go back and change it after I have accepted it. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Have you heard anything here today that causes you to reconsider the decision you have made to enter a Guilty Plea to Count 1 of the Indictment?

THE DEFENDANT: No, sir.

THE COURT: Understood everything we have gone over with you?

THE DEFENDANT: Yes, sir.

THE COURT: And heard everything that's taken place in open court?

THE DEFENDANT: Yes, sir.

THE COURT: Does the government know of any reason I should not permit the Defendant to plead guilty?

MR. PENFIELD: No, Your Honor.

>THE COURT: Mr. Tuten, do you know of any such reason?
>
>MR. TUTEN: No, sir.
>
>THE COURT: To the offense of violating Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), distribution of a controlled substance, fentanyl, the use of which resulted in a death, as charged in Count 1 of the Indictment, Mr. O'dell, how do you plead?
>
>THE DEFENDANT: Guilty.
>
>THE COURT: It is the finding of the Court in this case that the Defendant is fully competent and capable of entering an informed plea; that he is aware of the nature of the charge and the circumstances of the plea; and that the Plea of Guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is, therefore, accepted and the Defendant is now adjudged guilty of that offense.

*Transcript of Plea Hearing*, pp. 26-30.

Clearly, O'Dell was fully aware at the plea hearing of the meaning of the plea agreement, that he was facing a statutory minimum sentence of twenty years, and that the only way he could be sentenced below the statutory minimum was to provide substantial assistance to the government. Thus, to the extent his attorney could possibly be blamed for his misunderstanding of any portion of the plea agreement, O'Dell is unable to establish that he was prejudiced, since he declined to withdraw his plea after being fully informed of the meaning of the plea agreement. Moreover, counsel cannot possibly be found deficient for recommending the plea agreement to O'Dell, since it contained the only chance that he could be sentenced below the statutory minimum.[2] This claim is due to be dismissed.

---

[2] In fact, the court granted the government's Section 5K motion, based upon O'Dell's assistance to the government, which resulted in O'Dell being sentence below the statutory minimum, to only 151 months.

Accordingly, the magistrate judge RECOMMENDS that the § 2255 Motion to Vacate be DENIED. Any party may file specific written objections to this report within fifteen (15) days of the date it is filed in the office of the Clerk. Any objections filed must specifically identify the findings in the magistrate judge's recommendation to which the objections pertain. Frivolous, conclusive, or general objections will not be considered by the District Court. Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). A copy of the objections must be served upon all other parties to the action.

DONE this 25th day of January, 2012.

/s/ Robert R. Armstrong
ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE